UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JAMES A. HALE,

        Plaintiff,

v.

GRETCHEN WHITMER, et al.,

        Defendants.
_____/

Case No. 1:21-cv-524

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action originally brought under 42 U.S.C. § 1983 by thirteen state prisoners housed at the Lakeland Correctional Facility (LCF). On June 22, 2021, the Court denied the request for a class action certification and severed the claims of the thirteen prisoner-plaintiffs into separate actions. (ECF No. 36.) Each plaintiff, including Plaintiff Hale, was ordered to file an amended complaint containing only the allegations relevant to his claims for relief. (*Id.*) Plaintiff Hale filed an amended complaint (ECF No. 38), a motion to amend and/or supplement the complaint (ECF No. 39), and a second amended complaint (ECF No. 42). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton*

*v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff Hale's amended complaint for failure to state a claim.

## Discussion

I. **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility.

Plaintiff sues Governor Gretchen Whitmer, MDOC Director Heidi E. Washington, Doctor Margaret Quellete, Registered Nurse Lori Blue, Warden Bryant Morrison, Deputy Warden Robert Ault, Acting Administrative Assistant Janet Traeore, Resident Unit Manager Timothy Shaw, Law Librarian Linda Thompson, Corrections Officer Unknown Minor, Medical Provider E. Coe Hill, Resident Unit Manager Scott Cline, and Other Unknown Officers. Plaintiff also names Prisoner Counselors Karen Kowalski, Shawanda Cope, Patrick Daniels, Kevin Dirchell, and Dennis Randall.

In his first amended complaint (ECF No. 38), Plaintiff alleges that since being exposed to COVID-19 by MDOC staff and non-quarantined prisoners, he has not received a CAT scan or MRI to assess his physical condition. Plaintiff alleges that LCF experienced a new round of infections on July 7, 2021, but that kitchen workers from the East and West sides continued to be allowed to work together in Food Service.

Plaintiff claims that from the beginning of the pandemic, Defendants failed to institute a true quarantine, and that staff members were free to move in and out of facilities as carriers, which placed prisoners in imminent danger of infection. Plaintiff alleges that in March of 2020, the first COVID-19 infection was diagnosed in the E2 Unit, but no notice was given to the prisoners who had been exposed until after they had had contact with prisoners on the other

2

side of the prison. Plaintiff states that infected prisoners were allowed to mingle with uninfected prisoners in common areas and that the named Defendants knew, or should have known, of the danger to prisoners such as Plaintiff.

In Plaintiff's motion to amend and supplement pleadings, Plaintiff seeks to add new Defendants to his action. (ECF No. 39.) Plaintiff's motion names Deputy Warden Troy Chrisman, Kirsten Losinski, Counselor Markiyroe Garrett, Business/Mailroom Manager Sue Middlestadt, Mailroom Employees Christine Boden and Michael Stevens, Accounting Assistant Jessica Jones, Lieutenant Christiana Borst, Lieutenant Frank Sobrieski, and Health Unit Manager Nathan Mikel. However, Plaintiff's supplemental pleading is entirely conclusory. Nowhere in Plaintiff's motion does he allege any specific facts against any of the individuals he seeks to add to this action.

In Plaintiff's second amended complaint, he names each of the Defendants previously named in his first amended complaint. (ECF No. 42.) Plaintiff also includes a "individual supplemental statement of claim," in which he details specific facts regarding his experience with COVID-19. (*Id.*) Plaintiff alleges that in January of 2020, he was being housed at LCF in a dormitory type setting with seventy-nine other prisoners. Plaintiff states that when prisoner Kelly became ill on the west side of the compound, prisoners who had been in contact with him were moved to the east side, where they were allowed to mingle with the other prisoners. Plaintiff states that as a result of this mishandling of the situation, 814 prisoners at LCF became infected with COVID-19, and 24 of those prisoners died as a result.

Plaintiff states that the conduct of Defendants caused him to be exposed to infected prisoners and staff and ultimately led to him contracting COVID-19. Plaintiff was diagnosed with COVID-19 on May 22, 2020, but had been experiencing symptoms for some time prior to that date. On May 3, 2020, Plaintiff was feeling so ill that he had to roll off his bunk in order to stand

3

up. Plaintiff's breathing was extremely labored and he told Defendant Blue that he had pain in his upper right chest, shortness of breath, night chills, and fever. Defendant Blue told Plaintiff that he was one of many prisoners with those symptoms, and that no chest x-rays were being done. Plaintiff filed a grievance on May 4, 2020.

On May 15, 2020, Plaintiff felt so ill that he wrote a letter to health services at LCF regarding how he wanted his body to be handled in the event of his death. On June 5, 2020, Plaintiff sent another health care request, reporting a resurgence in chest pain and difficulty breathing. Plaintiff's request was intercepted by Defendant Blue, and no appointment was scheduled.

Plaintiff is fifty-nine years old and states that it has been more than a year since he was first exposed to COVID-19. Plaintiff currently suffers from the periodic loss of his voice, poor memory recall, continuous joint pain, high blood pressure that does not respond to medication, and labored breathing whenever he exerts himself. Plaintiff also claims that he suffers from a white blood cell disorder.

Plaintiff appears to be claiming that Defendants violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

II. **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough

facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III.    **Eighth Amendment**

Plaintiff's allegations do not rise to the level of an Eighth Amendment violation. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and

wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

Plaintiff alleges that on May 3, 2020, he told Defendant Blue that he had pain in his upper right chest, shortness of breath, night chills, and fever. Plaintiff states that when he spoke to Defendant Blue, he was feeling so weak that he had to roll off his bunk in order to stand up. Defendant Blue told Plaintiff that he was one of many prisoners with those symptoms, and that no chest x-rays were being done. Plaintiff also alleges that on June 5, 2020, he sent a health care request, reporting a resurgence in chest pain and difficulty breathing, but that this request was intercepted by Defendant Blue, and no appointment was scheduled.

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary

standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical

need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

8

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154–55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

9

The Court concludes that Plaintiff's allegations against Defendant Blue—that she told him that no x-rays were being done for prisoners exhibiting Plaintiff's symptoms on May 4, 2020, prior to his diagnosis with COVID-19, and that she took a health care kite from Plaintiff on June 15, 2020, and did not schedule him for an appointment—do not rise to the level of an Eighth Amendment violation. Plaintiff fails to allege facts showing that his symptoms were life threatening or that Defendant Blue denied him some necessary treatment. Therefore, Plaintiff's Eighth Amendment claim against Defendant Blue is properly dismissed.

The assertions made by Plaintiff against the remaining Defendants in each of his pleadings are entirely conclusory. In fact, Plaintiff fails to specifically name any of the remaining Defendants in the body of his complaint and instead generally asserts that Defendants are responsible for the failure to protect prisoners from COVID-19 virus by virtue of their job duties. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims

against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries"). Because Plaintiff's claims fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), his complaint must be dismissed against Defendants Whitmer, Washington, Quellete, Morrison, Ault, Traeore, Shaw, Thompson, Minor, Hill, Cline, Unknown Officers, Kowalski, Cope, Daniels, Dirchell, and Randall.

## IV. Supplemental and amended pleadings

As noted above, Plaintiff has filed a motion to amend and/or to supplement the complaint (ECF No. 39), in which he seeks to add new Defendants to his action. (ECF No. 39.) Plaintiff's motion names Deputy Warden Troy Chrisman, Kirsten Losinski, Counselor Markiyroe Garrett, Business/Mailroom Manager Sue Middlestadt, Mailroom Employees Christine Boden and Michael Stevens, Accounting Assistant Jessica Jones, Lieutenant Christiana Borst, Lieutenant Frank Sobrieski, and Health Unit Manager Nathan Mikel. However, Plaintiff's supplemental pleading is entirely conclusory. Nowhere in Plaintiff's motion does he allege any specific facts against any of the individuals he seeks to add to this action. Therefore, even if the Court allowed Plaintiff to add these individuals to this action, his claims against them would fail because they are entirely conclusory. Therefore, Plaintiff's motion to amend and/or supplement the complaint (ECF No. 39) is properly denied as futile.

In Plaintiff's second amended complaint he names each of the Defendants previously named in his first amended complaint, as well as supplementing his first amended complaint with additional specific facts relating to Plaintiff's experience with COVID-19. (ECF No. 42.) The Court accepts Plaintiff's second amended complaint and has considered the information presented in deciding on the merits of Plaintiff's claims in this case.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.

Dated:   November 18, 2021                        /s/ Janet T. Neff
                                                  Janet T. Neff
                                                  United States District Judge